# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                       No. CR 10-3463 JB

EDDIE CHACO, JR.,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the United States' Motion *in Limine* to Permit Testimony from Medical Provider Regarding Victim's Statement Pursuant to Fed. R. Evid. 803(4), filed July 18, 2011 (Doc. 28)("Statements MIL"); and (ii) the United States' Motion *in Limine* to Narrow Scope of Impeachment of Dr. Renee Ornelas, filed July 25, 2011 (Doc. 37)("Impeachment MIL"). The Court held an evidentiary hearing on August 3, 2011. The primary issues are: (i) whether the Court should allow Renee Ornelas, M.D., a child sexual abuse medical examiner, to testify about the alleged victim's statements to Dr. Ornelas during the course of a sexual assault examination; and (ii) whether Defendant Eddie Chaco, Jr. should be allowed to impeach Dr. Ornelas directly or indirectly with the United States Court of Appeals for the Tenth Circuit's decision in <u>United States v. Velarde</u>, 214 F.3d 1204 (10th Cir. 2000). Because the statements the alleged victim made to Dr. Ornelas are admissible under rule 803(4) of the Federal Rules of Evidence, the Court will allow them. The Court will not allow Chaco to impeach Dr. Ornelas with the Tenth Circuit's opinion in <u>United States v. Velarde</u>, and it will also not allow Dr. Ornelas to testify as to her opinion whether the alleged victim was sexually abused. The Court will

also allow Dr. Ornelas to testify that she found no physical evidence of sexual abuse during her examination, but that finding no physical evidence of sexual abuse is not inconsistent with sexual abuse having occurred.

## FACTUAL BACKGROUND

Chaco allegedly sexually abused Jane Doe between August 2008 and May 2010. On November 4, 2010, approximately six months after the last incident of alleged abuse, Doe underwent a sexual assault examination by Dr. Ornelas as part of the investigation into her allegations. As part of her examination, Dr. Ornelas obtained a patient narrative from Doe. With respect to the abuse alleged in the indictment, Doe stated to Dr. Ornelas that: (i) Chaco told Doe to lick his privates; (ii) Chaco told Doe to touch his privates with her hand; (iii) Chaco took off all Doe's clothing; (iv) Chaco touched Doe's chest, her "front," and her "butt" with his hands; (v) Chaco put his "thing" in Doe's "front"; (vi) Chaco put his finger in her "front"; (vii) Doe observed "white stuff" come out of his "thing" and land on her body, which he then wiped it off of her; (viii) the abuse occurred during occasions when the Chaco was drunk; (ix) Chaco told Doe that he was "never going to do it again"; (x) Chaco would attempt to sneak up on Doe when she was asleep; and (xi) the abuse occurred when she was ten or eleven years old. Dr. Ornelas found no physical evidence of sexual abuse during the course of the examination.

## PROCEDURAL BACKGROUND

On December 29, 2010, a grand jury returned an Indictment against Chaco for three counts of aggravated sexual abuse on or between August 2008 and May 2010, in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(D).  See Doc. 1.  On July 18, 2011, Plaintiff United States of America filed its Notice of Intent to Introduce Expert Witness Testimony Pursuant to Rules 702, 703 and 705, filed July 18, 2011 (Doc. 27)("Notice of Intent").  The Notice of Intent identified Dr.

Ornelas, as "an expert in the field of child sexual assault examinations." Notice of Intent at 1. The Notice of Intent stated that Dr. Ornelas "will testify that Doe gave a clear, graphic description of sexual abuse perpetrated by the Defendant," and that she would also "testify that the physical examination of Jane Doe yielded normal results," and "that the results of the physical exam neither confirm nor invalidate the allegations as set forth in the indictment." Notice of Intent at 1-2. Dr. Ornelas asserts that "[s]uch a result, however, is normal and expected given the types of contact Jane Doe described and the time lapse since the incidents." Notice of Intent at 2.

In its Statements MIL, the United States moves in limine for a pre-trial ruling permitting testimony from Dr. Ornelas regarding Doe's statements provided to Dr. Ornelas during Doe's sexual assault examination. The United States contends that Dr. Ornelas' testimony about Doe's statements is permitted under rule 803(4). The United States further contends that the statements do not violate Chaco's right to confront witnesses under Crawford v. Washington, 541 U.S. 36 (2004), because Doe will testify at trial and Doe's statement are not testimonial.

In its Impeachment MIL, the United States moves in limine for an order prohibiting Chaco, through counsel, from mentioning at trial or putting forth any evidence, asking any question, or making any statement or argument, either directly or indirectly, concerning the Tenth Circuit's holding in United States v. Velarde. At trial in that case, the United States solicited two opinions from Dr. Ornelas that Velarde challenged, namely (i) whether a "normal" exam, that is, an exam that revealed no physical injuries, was consistent with child sexual abuse; and (ii) if she was "comfortable forming a diagnosis of child sexual abuse." 214 F.3d at 1209. With respect to the first question, Dr. Ornleas responded that a normal exam "is the most common physical finding[] for a child who has been sexually abused." 214 F.3d at 1209. As to the second opinion, Dr. Ornelas responded she would "base that diagnosis on the child's statements about what had happened to

them."  214 F.3d at 1209.  Both prior to and during trial, Velarde unsuccessfully objected to this testimony on the basis that the proffered opinions were unreliable.  The trial court overruled the objection and admitted the opinions.  The Tenth Circuit reversed the conviction, holding that the trial court failed to make any reliability findings with respect to Dr. Ornelas.  See 214 F.3d at 1209-10 ("The record in this case reveals no such reliability determination.").

The United States contends that the Tenth Circuit did not make any finding in United States v. Velarde concerning the reliability of Dr. Ornelas's testimony, her veracity, or her qualifications. Instead, the reversal was premised entirely on the failure of the trial court to make reliability determinations as the Supreme Court of the United States required in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), and in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).  In other words, the United States asserts, it was the process -- not the expert -- that failed in United States v. Velarde.

The United States further asserts that Dr. Ornelas will not vouch for Doe's testimony.  See United States v. Velarde, 214 F.3d at 1211 n.6 ("Dr. Ornelas's statement that she would base her diagnosis of child sexual abuse on the child's statements about what had happened to them, appears to be impermissible vouching.").  The United States asserts that it "will not ask any question regarding Dr. Ornelas's opinion as to whether the victim had been sexually abused or seek to introduce any other diagnosis that would require Dr. Ornelas to rely on the victim's statement about what had happened to her."  Impeachment MIL at 3-4.

On August 1, 2011, Chaco filed his Response to United States' Motion in Limine to Narrow Scope of Impeachment of Dr. Renee Ornelas, filed August 1, 2011 (Doc. 57)("Response"), and his Response to United States' Motion in Limine to Permit Testimony from Medical Provider Regarding Victim's Statemeent [sic] Pursuant to Fed. R. Evid. 803(4), see Doc. 58, which merely

incorporates the former by reference.  Chaco "requests that Dr. Renee Ornelas not be allowed to testify in this case."  Response at 3.  Chaco also filed his Opposed Motion for *Daubert* Hearing, filed July 26, 2011 (Doc. 38), seeking a hearing under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), to address whether the Court will admit Dr. Ornelas' "testimony . . . that in her expert opinion, Mr. Chaco sexually abused Jane Doe."  Opposed Motion for *Daubert* Hearing at 2. In his responses and Opposed Motion for *Daubert* Hearing, Chaco asserts that he should be allowed to test the reliability of Dr. Ornelas' opinion in a hearing under Daubert v. Merrell Dow Pharmaceuticals, Inc..  Chaco further contends in his Response that there is insufficient time to hold a hearing under Daubert v. Merrell Dow Pharmaceuticals, Inc. before the August 8, 2011 trial date, and Chaco does not want to continue the trial.  See Response at 3.  He asserts that this time crunch is a result of the United States' waiting until July 18, 2011 to file its Notice of Intent.  Chaco argues, therefore, that Dr. Ornelas should not be allowed to testify.[1]

At the August 3, 2011 hearing, Chaco clarified that, because Dr. Ornelas' expert report indicated that she could not conclude whether Doe was sexually assaulted, she should not be permitted to opine on the matter as an expert.  The United States represented that, for the most part, Dr. Ornelas would in effect testify as a fact witness about the examination, testifying only as to her observations, including Doe's statements to her.  The United States asserted that Doe's statements are admissible under rule 803(4), because Dr. Ornelas is a doctor, and Doe was taken to Dr. Ornelas for the express purpose of receiving treatment.  The United States asserted that Dr. Ornelas

---

[1] Chaco asserts, in the alternative, that if Dr. Ornelas is allowed to testify, the Court allow him to elicit testimony from her that Doe stated during the examination that two other individuals sexually abused her.  The Court takes up Chaco's alternative request in it order addressing the United States' Motion in Limine to Exclude Evidence of Prior Instances of Abuse Perpetrated on Jane Doe, filed July 25, 2011 (Doc. 34).

preformed the examination at the behest of federal investigators approximately six months after the last incident of indicted abuse.  The United States represented that Doe would testify at trial.

Regarding her expert testimony, the United States represented that Dr. Ornelas would not opine whether Doe was sexually assaulted.  The United States asserted that, as an expert, Dr. Ornelas would testify that an absence of physical evidence of sexual assault is not inconsistent with sexual assault.  Chaco stated that he does not object to this testimony.  Accordingly, Chaco withdrew his request for a Opposed Motion for *Daubert* Hearing, filed July 26, 2011 (Doc. 38).  Chaco also asserted that he did not plan to impeach Dr. Ornelas with the holding in United States v. Velarde.

## LAW REGARDING RULE 803(4)

Hearsay testimony is generally inadmissible.  See Fed. R. Evid. 802.  The Federal Rules of Evidence contain a number of exceptions, however, to the hearsay prohibition.  See Fed. R. Evid. 803, 804.  One of these exceptions, rule 803(4), excepts from the general bar on hearsay "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."  Fed. R. Evid. 803(4).

### 1.    Rationale for the 803(4) Exception.

This exception is premised on the rationale that a patient's statements to his or her physician are likely to be particularly reliable because the patient has a self-interested motive to be truthful. The patient knows that the efficacy of his or her medical treatment depends upon the accuracy of the information he or she provides to the doctor.  See United States v. Joe, 8 F.3d 1488, 1493 (10th Cir. 1993), cert. denied, 510 U.S. 1184 (1994).  Stated differently, "a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause

misdiagnosis or mistreatment, carries special guarantees of credibility." White v. Illinois, 502 U.S. 346, 356 (1992).

The selfish-interest/treatment rationale, therefore, supports the exception. In United States v. Joe, the Tenth Circuit stated:

> The Rule 803(4) exception to the hearsay rule is founded on a theory of reliability that emanates from the patient's own selfish motive -- her understanding "that the effectiveness of the treatment received will depend upon the accuracy of the information provided to the physician." 2 McCormick on Evidence § 277, at 246-47 (John W. Strong ed., 4th ed. 1992).

United States v. Joe, 8 F.3d at 1493-94. It is the patient's self-interest in furnishing accurate information that provides the guarantee of trustworthiness which justifies exempting these out-of-court statements from the general hearsay prohibition. See White v. Illinois, 502 U.S. at 356 ("[A] statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a trier of fact may not think replicated by courtroom testimony.").

In United States v. Joe, the Tenth Circuit observed that the United States Courts of Appeals for the Fourth and Eighth Circuits have applied a two-part test to determine a statement's admissibility under rule 803(4). See 8 F.3d at 1494 n.5 (citing United States v. Renville, 779 F.2d 430, 436 (8th Cir. 1985)). Under the first half of the test, "the declarant's motive in making the statement must be consistent with the purposes of promoting treatment." 8 F.3d at 1494 n.5. Second, "the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." 8 F.3d at 1494 n.5.

In United States v. White, 11 F.3d 1446 (8th Cir. 1993), the defendant was convicted of sexually abusing his wife's two grandsons, R.H. and L.H., who were nine and seven years old, respectively, at the time of the defendant's trial. On appeal, the defendant argued that statements

which R.H. made to a social worker were not admissible under rule 803(4).  The Eighth Circuit

noted that, for the statements to be admissible under rule 803(4), the government "must show that

R.H. understood that he was speaking to a trained professional for the purposes of obtaining

diagnosis of, or providing treatment for, emotional or psychological injuries." 11 F.3d at 1449.  The

Eighth Circuit concluded: "There is nothing in the record to suggest that R.H. appreciated that it was

in his best interests to tell the truth and was therefore unlikely to lie."  11 F.3d at 1450.  "How [the

social worker] explained her role and purpose to R.H., how she asked him questions, and how and

where she conducted the interview are matters that can provide evidence 'that the child understood

the physician's [or therapist's] role in order to trigger the motivation to provide truthful

information.'"  11 F.3d at 1450.  (quoting United States v. Barrett, 8 F.3d 1296, 1300 (8th Cir.

1993)).

　　　　The Eighth Circuit in United States v. White also relied on Ring v. Erickson, 983 F.2d 818

(8th Cir. 1992), a habeas case which held that the admission at trial, under Minn. R. Evid. 803(4),

of out-of-court statements made by a three-year-old child, C.R., to a physician, violated the

petitioner's confrontation rights.  Minn. R. Evid. 803(4) was identical to federal rule 803(4).  In so

holding, the Eighth Circuit said:

>     C.R.'s mother, not C.R., sought the "medical treatment," and there was no evidence
>     suggesting that at the time of the interview C.R. even knew Dr. Levitt was a doctor.
>     C.R. was three years old at the time.  The principal reason why 803(4) is a traditional
>     hearsay exception automatically carrying the indicia-of-reliability label is because
>     of the selfish-motive doctrine.  This exception is based on the belief that a person
>     seeking medical treatment is unlikely to lie to a doctor she wants to treat her, since
>     it is in her best interest to tell the truth.  White [v. Illinois], [502] U.S. at [354]-[58.]
>     . . . .

983 F.2d at 820.  See People of Territory of Guam v. Ignacio, 10 F.3d 608, 613 n.3 (9th Cir. 1993)

("[W]hether a statement is admissible under the medical treatment exception does not depend solely

on the intent of the questions, but also on whether the respondent understands herself to be providing information for purposes of medical treatment."). In Morgan v. Foretich, 846 F.2d 941 (4th Cir. 1988), retired Associate Justice Lewis F. Powell Jr., sitting by designation on the United States Court of Appeals for the Fourth Circuit, concurred in part and dissented in part, stating:

> [T]here is no evidence in the record that [the girl's] frame of mind was comparable to a patient seeking treatment. . . . [T]here is no evidence that Dr. Harrison ever explained to [the child] that his questions and relationship with her arose, at least in part, from a desire to treat her. . . . Absent a finding that [the child] made her statements believing they would be used by Dr. Harrison to help her, I am reluctant to rest my decision on the cases relied on by the court.

846 F.2d at 951-52. See Oldsen v. People, 732 P.2d 1132, 1135-36 (Colo. 1986)(holding statements inadmissible under Colo. R. Evid. 803(4) -- which was identical to the federal rule -- because there was no evidence that the five-year-old child "was capable of recognizing, at the time the challenged statements were made, the need to provide accurate information for purposes of medical diagnosis or treatment within the meaning of Fed. R. Evid. 803(4)"). The Supreme Court of Colorado in Oldsen v. People held that the prosecution, as proponent of the hearsay statements, had the burden of establishing the foundation for admitting them under an exception to the hearsay rule. See 732 P.2d at 1135 n.7. The court in Oldsen v. People upheld the conviction, however, because the challenged testimony was admitted properly on the alternative ground of being circumstantially trustworthy. See 732 P.2d at 1137. But see United States v. George, 960 F.2d 97, 100 (9th Cir. 1992)("As a general matter, the age of the child and her other personal characteristics go to the weight of the hearsay statements rather than their admissibility."). In State v. Robinson, 153 Ariz. 191, 735 P.2d 801 (1987), the Supreme Court of Arizona upheld the admission of statements under rule 803(4) of the Arizona Rules of Evidence -- which also was identical to the federal rule -- concluding:

-9-

> The record is not clear regarding [the child's] motive in making the challenged statements. The record does indicate, however, that [the] statements were elicited in the course of treatment. And nothing in the record indicates that [the child victim's] motive in making these statements was other than as a patient seeking [or at least needing] treatment.

State v. Robinson, 153 Ariz. at 199, 735 P.2d at 809 (internal quotation marks and citations omitted).

### 2.    The Tenth Circuit's Test for Admissibility Under Rule 803(4).

"[T]he test for admissibility under rule 803(4) is whether the subject matter of the statements is reasonably pertinent to diagnosis or treatment." United States v. Tome, 61 F.3d 1446, 1451 (10th Cir. 1995). Accordingly, the Tenth Circuit has rejected the two-part test that the Fourth and the Eighth Circuits have used to evaluate evidence proffered under rule 803(4), stating:

> The Fourth and Eighth Circuits . . . have employed the following two-part test to determine a statement's admissibility under Rule 803(4): "first, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." Renville, 779 F.2d at 436; Morgan, 846 F.2d at 949 (quoting Renville). This two-part test is not contemplated by the rule and is not necessary to ensure that the rule's purpose is carried out.

United States v. Joe, 8 F.3d at 1494 n.5. As the Tenth Circuit explained in United States v. Joe: "[T]he plain language of Rule 803(4) should guide us in determining the admissibility of statements made for purposes of medical diagnosis or treatment." 8 F.3d at 1494 n.5. Moreover, because it follows the plain language of rule 803(4), the Tenth Circuit has rejected any presumptions against admission of hearsay evidence under the exception in the case of children. See United States v. Edward J., 224 F.3d 1216, 1219 (10th Cir. 2000)("Edward encourages us to . . . establish a presumption that Rule 803(4) does not apply to statements given by young children to their doctors identifying their abusers unless the physician first explains to the child such information is important for their treatment. We decline to do so.").

For a hearsay statement to be admissible under rule 803(4), the declarant need not have

-10-

necessarily made the statement to a physician.  As the advisory committee's note to the rule

explains, "[s]tatements to hospital attendants, ambulance drivers, or even members of the family

might be included."  Fed. R. Evid. 803(4) advisory committee's note.

> ### 3.      Identification of the Assailant in Sexual-Abuse Cases.

A declarant's statement to a physician that identifies the person responsible for the

declarant's injuries is ordinarily inadmissible under rule 803(4) because the assailant's identity is

usually unnecessary either for accurate diagnosis or effective treatment.  See United States v. Joe,

8 F.3d at 1494.  The Tenth Circuit held in United States v. Joe, however, that a hearsay statement

revealing the identity of a sexual abuser who is a member of the victim's family or household "is

admissible under rule 803(4) where the abuser has such an intimate relationship with the victim that

the abuser's identity becomes 'reasonably pertinent' to the victim's proper treatment."  8 F.3d at

1495.  In so holding, the Tenth Circuit reasoned:

> All victims of domestic sexual abuse suffer emotional and psychological injuries, the
> exact nature and extent of which depend on the identity of the abuser.  The physician
> generally must know who the abuser was in order to render proper treatment because
> the physician's treatment will necessarily differ when the abuser is a member of the
> victim's family or household.  In the domestic sexual abuse case, for example, the
> treating physician may recommend special therapy or counseling and instruct the
> victim to remove herself from the dangerous environment by leaving the home and
> seeking shelter elsewhere.

8 F.3d at 1494-95 (footnote omitted).  Although the victim in United States v. Joe was an adult, the

Tenth Circuit stated that "the identity of the abuser is reasonably pertinent in virtually every

domestic sexual assault case," including "statements made by a child to a physician which identify

the sexual abuser as a member of the family or household."  8 F.3d at 1494.  Thus, when a victim

of domestic sexual abuse identifies her assailant to her physician, the physician's recounting of the

identification is admissible under rule 803(4) when it is "reasonably pertinent" to the victim's

treatment or diagnosis.  United States v. Joe, 8 F.3d at 1495.  See 2 J. Strong, McCormick on Evidence § 277, at 248 (4th ed. 1992).

In United States v. Tome, the defendant was convicted in the United States District Court for the District Court of New Mexico of sexual abuse of a child.  The Tenth Circuit originally affirmed the admission of testimony from six witnesses relaying the child's statements as non-hearsay under rule 801(d)(1)(B), see 3 F.3d 342, 344 (10th Cir. 1993), and the defendant appealed. The Supreme Court reversed and remanded to the Tenth Circuit, because the statements were not "made before the charged recent fabrication or improper influence or motive."  513 U.S. 150, 167 (1995).  On remand, the Tenth Circuit "determine[d] whether the challenged evidence could have been admitted under another rule of evidence."  United States v. Tome, 61 F.3d at 1449.

The Tenth Circuit first addressed the testimony of three pediatricians who examined the child.  In their trial testimony, the three doctors relayed statements the child made either before or during the doctors' physical examinations.  The Tenth Circuit held that all of the testimony was admissible under rule 803(4).

1. Testimony of Karen Kuper

Kae Ecklebarger of Child Protection Services referred A.T. to Dr. Karen Kuper, a board certified pediatrician, for a physical examination.  Kuper testified that she examined A.T. on two occasions, in September and October 1990.  Prior to the first examination, Kuper interviewed A.T.  Kuper testified that the purpose of the interview was "to ascertain exactly what injuries had occurred."  In response to Kuper's questions, A.T. told Kuper about the sexual abuse, at times pointing to the appropriate areas of dolls to answer Kuper's questions.  A.T. also identified defendant as her abuser.  After the interview, Kuper performed a complete physical examination of A.T.

We find it clear that A.T.'s statement to Kuper was reasonably pertinent to Kuper's proper diagnosis and treatment of A.T.  The information contained in the statement was important to Kuper's determination of A.T.'s condition.  This statement was therefore admissible under Rule 803(4).

-12-

2. Testimony of Laura Reich

A.T. saw Dr. Laura Reich on September 21, 1990, for treatment of a skin rash in the vaginal area that was unrelated to any sexual abuse. At the time of Reich's examination of A.T., Reich was aware of the allegations of sexual abuse. Reich testified that, prior to conducting the physical examination, she asked A.T. several personal questions. One of these questions was whether "anybody had ever touched her in her private area." According to Reich's testimony, A.T. replied "that her father had put his thing in her." The remainder of Reich's testimony concerned her findings and conclusions from the physical examination.

Reich testified that the reason she had conducted a preexamination interview with A.T. was "that the child needs to be comfortable with me before I examine her." Because the adequacy of Reich's examination in part depended on the child's comfort with her, we find that A.T.'s statement was reasonably pertinent to Reich's diagnosis or treatment. It consequently was admissible under Rule 803(4).

3. Testimony of Jean Spiegel

Dr. Jean Spiegel, an assistant professor of pediatrics at the University of New Mexico, testified that she examined A.T. for the purpose of offering a second opinion as to whether the child had been sexually abused. Spiegel had extensive training in the area of child sexual abuse, and teaches other doctors how to examine children to detect molestation. Most of Spiegel's testimony focused on the technical aspects of her examination of A.T. and her conclusion that A.T. had experienced chronic vaginal penetration.

On redirect examination, Spiegel testified that A.T. told her where on her body she had been touched during the abuse. Spiegel did not ask, nor did A.T. volunteer, who had touched her. Clearly, A.T.'s statement regarding where she had been touched was pertinent to Spiegel's diagnosis of A.T. The district court therefore properly admitted the statement under Rule 803(4).

61 F.3d at 1450-51.

The Tenth Circuit also held that the victim's statements to a caseworker and babysitter were not admissible under rule 803(4). The relevant portions of the Tenth Circuit's decision on remand involve the testimony of Kae Ecklebarger of Colorado Springs Child Protection Services. Ecklebarger, a caseworker, interviewed A.T. on August 29, 1990. Ecklebarger testified that, during the interview, A.T. gave Ecklebarger a detailed account of the alleged abuse, at times using

anatomically correct dolls to demonstrate what had occurred.  See United States v. Tome, 61 F.3d at 1451.  Ecklebarger also testified that A.T. alleged she had told her grandmother and aunt of the abuse.  The United States argued that Ecklebarger's testimony was admissible under either rule 803(4) and then-rule 803(24), the residual exception.  See United States v. Tome, 61 F.3d at 1451-52.  The United States argued that A.T.'s statement to Ecklebarger was admissible, because the job of a Child Protection Services caseworker "was equivalent to that of a doctor under Fed. R. Evid. 803(4)" and because A.T. understood that Ecklebarger's role was to "help kids."  United States v. Tome, 61 F.3d at 1451.  The Tenth Circuit rejected the United States' proffer, noting:

> Ecklebarger neither diagnosed nor treated A.T.  She described her role as "the initial short-term investigat[or]."  Ecklebarger spoke to A.T. two times, after which "[t]he case was sent on to an ongoing protection worker."  Clearly, Ecklebarger did not treat A.T. in any way.
>
> Nor did Ecklebarger diagnose A.T.  Indeed, Ecklebarger referred the child to Dr. Kuper for a medical opinion regarding the allegations of abuse.  Moreover, Ecklebarger testified that she interviewed A.T. only to the extent necessary to make a decision whether a protective order was appropriate.  Because Ecklebarger did not diagnose or treat A.T., the child's statement to Ecklebarger could not have been for the "purpose[ ] of medical diagnosis or treatment," and thus was not properly admitted under Rule 803(4).

United States v. Tome, 61 F.3d at 1451 (alterations in original).

Ecklebarger testified that she interviewed A.T. only to the extent necessary to make a decision whether a protective order was appropriate.  See id.  The Tenth Circuit stated that, because Ecklebarger did not diagnose or treat A.T., the child's statement to Ecklebarger could not have been for the "purpose[] of medical diagnosis or treatment," and thus was not properly admitted under rule 803(4).  United States v. Tome, 61 F.3d at 1451.

### TESTIMONIAL STATEMENTS UNDER *CRAWFORD V. WASHINGTON*

The framework for admissibility of out-of-court statements under the Confrontation Clause,

which the Supreme Court set forth in <u>Crawford v. Washington</u>, turns largely on whether the statement sought to be admitted is "testimonial."  The Tenth Circuit has stated that a critical element in determining whether a statement is testimonial or non-testimonial "centers on the reasonable expectations of the declarant."  <u>United States v. Summers</u>, 414 F.3d 1287, 1302 (10th Cir. 2005). The Tenth Circuit has held that "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime."  <u>United States v. Townley</u>, 472 F.3d 1267, 1272 (10th Cir. 2007)(quoting <u>United States v. Summers</u>, 414 F.3d at 1302).  Other Circuit Courts of Appeal are in accord.  <u>See</u> <u>United States v. Townley</u>, 472 F.3d at 1272 (citing <u>United States v. Hinton</u>, 423 F.3d 355, 360 (3d Cir. 2005); <u>United States v. Cromer</u>, 389 F.3d 662, 675 (6th Cir. 2004); <u>United States v. Saget</u>, 377 F.3d 223, 229 (2d Cir. 2004)).  The Tenth Circuit in <u>United States v. Smalls</u>, 605 F.3d 765 (10th Cir. 2010), called into question some aspects of the definition of testimonial that it set down in <u>United States v. Summers</u>.  <u>See</u> <u>United States v. Smalls</u>, 605 F.3d at 777 ("Upon close inspection, <u>Summers</u>' definition of 'testimonial' appears somewhat in tension with <u>Davis</u>[ v. Washington, 547 U.S. 813 (2006)'s] strictures, and perhaps overly broad . . . .").  Specifically, the Tenth Circuit stated that a testimonial statement must be made in a "formal" context, although they were not specific about what that might mean.  <u>See</u> <u>United States v. Smalls</u>, 605 F.3d at 777-78.  Next, the Tenth Circuit specified that the <u>United States v. Summers</u> articulation ignored the statement's "primary purpose," and focused instead on the foreseeability to the declarant of the purposes to which the statement "might" be put.  <u>United States v. Smalls</u>, 605 F.3d at 777-78.  With those two clarifications, it declined to restate a precise definition of a testimonial statement, instead setting forth two proposed definitions, either one of which it might adopt if the issue were put directly before it:

> [W]e might today formulate a definition of a testimonial statement which reads: a formal declaration made by the declarant that, when objectively considered, indicates the primary purpose for which the declaration was made was that of establishing or proving some fact potentially relevant to a criminal prosecution.  Or, to better conform to the current state of Tenth Circuit precedent, we might say: A formal statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime.

United States v. Smalls, 605 F.3d at 778 (proffering these potential tests, but holding "we need not now . . . tender a definitive definition of 'testimonial,' because Cook's statement is nontestimonial regardless of which of the foregoing definitions we apply").

## ANALYSIS

The Court will allow Dr. Ornelas to testify about Doe's statements during the sexual abuse examination, because the statements are admissible under rule 803(4) and Doe will testify at trial, thereby protecting Chaco's Confrontation Clause rights.  The Court will also allow Dr. Ornelas to testify that she found no evidence of sexual abuse during her examination, but that finding no physical evidence of sexual abuse is not inconsistent with sexual abuse having occurred.  Based on Chaco's representation at the hearing that he did not plan to impeach Dr. Ornelas with the holding in United States v. Velarde., the Court grants the United States' request that the Court prohibit him, through counsel, from mentioning at trial or putting forth any evidence, asking any question, or making any statement or argument, either directly or indirectly, concerning the Tenth Circuit's holding in United States v. Velarde.  Based on the United States' representation that it will not elicit testimony from Dr. Ornelas about her opinion whether Doe was sexually abused, the Court will order that Dr. Ornelas not opine whether Doe was sexually abused.

## I.    THE COURT WILL ALLOW DR. ORNELAS TO TESTIFY ABOUT DOE'S STATEMENTS DURING THE SEXUAL ASSAULT EXAMINATION.

The United States argues that Doe's statements to Dr. Ornelas fall within the rule 803(4)'s

hearsay exception, which provides:

> **Statements for purposes of medical diagnosis or treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Fed. R. Evid. 803(4).  "The Rule 803(4) exception to the hearsay rule is founded on a theory of reliability that emanates from the patient's own selfish motive -- her understanding 'that the effectiveness of the treatment received will depend upon the accuracy of the information provided to the physician." United States v. Joe, 8 F.3d at 1493-94 (citations omitted).  While "the patient's strong motivation to be truthful . . . .  extends to statements as to causation," Fed. R. Evid. 803(4) advisory committee's note, "it does not ordinarily extend to statements regarding fault," United States v. Joe, 8 F.3d at 1494.  Nonetheless, the Tenth Circuit has joined the United States Courts of Appeals for the Fourth, Eight, and Ninth Circuits in holding that "statements made by a child to a physician which identify the sexual abuser as a member of the family or household are 'reasonably pertinent to diagnosis or treatment' and may therefore be admissible." United States v. Joe, 8 F.3d at 1493-94 (citing United States v. Balfany, 965 F.2d 575, 579 (8th Cir. 1992); United States v. George, 960 F.2d at 99-100; Morgan v. Foretich, 846 F.2d at 949).

Were it writing on a clean slate, the Court would adopt the Fourth and Eighth Circuits' two-part test for determining a statement's admissibility under rule 803(4).  See United States v. Joe, 8 F.3d at 1494 n.5 (citing United States v. Renville, 779 F.2d at 436).  Under the first half of the test, "the declarant's motive in making the statement must be consistent with the purposes of promoting treatment."  8 F.3d at 1494 n.5.  Second, "the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis."  8 F.3d at 1494 n.5.  The Tenth Circuit, however has rejected that test, United States v. Joe, 8 F.3d at 1494 n.5 ("This two-part test is not

contemplated by the rule and is not necessary to ensure that the rule's purpose is carried out."), instead asking only statements "are reasonably pertinent to diagnosis or treatment." United States v. Joe, 8 F.3d at 1493-94.

The Court will admit Doe's statements to Dr. Ornelas, because Doe's statements were reasonably pertinent to diagnosis or treatment. In United States v. Tome, the Tenth Circuit held that a variety of statements made to medical providers as part of investigation into allegations of child sexual abuse in the months after the alleged abuse were admissible pursuant to Fed. R. Evid. 803(4). The abuse was alleged to have occurred on or about June 18, 1989, before the victim's mother took custody of her for the summer. See United States v. Tome, 3 F.3d at 345. The mother contacted authorities with allegations of abuse on August 27, 1990. See Tome v. United States, 513 U.S. at 153. The doctors examined the victim in September and October of 2007, approximately three to five months after the alleged abuse. In their testimony, the three doctors relayed the victim's statements to the doctors either before or during the doctors' physical examinations. The Tenth Circuit stated:

> Although hearsay testimony is generally inadmissible, Fed. R. Evid. 802, the Federal Rules of Evidence contain a number of exceptions to the hearsay prohibition. See Fed.R.Evid. 803, 804. One of these exceptions, Rule 803(4), makes admissible "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Fed. R. Evid. 803(4). This exception is premised on the theory that a patient's statements to her physician are likely to be particularly reliable because the patient has a self-interested motive to be truthful: She knows that the efficacy of her medical treatment depends upon the accuracy of the information she provides to the doctor. United States v. Joe, 8 F.3d 1488, 1493 (10th Cir. 1993), cert. denied, 510 U.S. 1184 . . . (1994). Stated differently, "a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility." White v. Illinois, 502 U.S. 346, 356 . . . (1992).

> A declarant's statement to a physician that identifies the person responsible

for the declarant's injuries is ordinarily inadmissible under Rule 803(4) because the assailant's identity is usually unnecessary either for accurate diagnosis or effective treatment.  Joe, 8 F.3d at 1494.  This court held in Joe, however, that a hearsay statement revealing the identity of a sexual abuser who is a member of the victim's family or household "is admissible under Rule 803(4) where the abuser has such an intimate relationship with the victim that the abuser's identity becomes 'reasonably pertinent' to the victim's proper treatment."  Id. at 1495.  In so holding, we reasoned that

> [a]ll victims of domestic sexual abuse suffer emotional and psychological injuries, the exact nature and extent of which depend on the identity of the abuser.  The physician generally must know who the abuser was in order to render proper treatment because the physician's treatment will necessarily differ when the abuser is a member of the victim's family or household.  In the domestic sexual abuse case, for example, the treating physician may recommend special therapy or counseling and instruct the victim to remove herself from the dangerous environment by leaving the home and seeking shelter elsewhere.

Id. at 1494-95 (footnote omitted).  Although the victim in Joe was an adult, we stated that "the identity of the abuser is reasonably pertinent in virtually every domestic sexual assault case," including those in which the victim is a child.  Id. at 1494.  Thus, when a victim of domestic sexual abuse identifies her assailant to her physician, the physician's recounting of the identification is admissible under Rule 803(4) when it is "reasonably pertinent" to the victim's treatment or diagnosis.  Id. at 1495; see also John W. Strong et al., 2 McCormick on Evidence § 277, at 248 (4th ed. 1992) (hereinafter McCormick).  After reviewing the testimony of each pediatrician, we conclude that A.T.'s statements to those doctors were reasonably pertinent to her diagnosis or treatment.

United States v. Tome, 61 F.3d at 1449-50.  The Tenth Circuit held admissible the victim's statements to treating doctors: (i) "about the sexual abuse, at times pointing to the appropriate areas of dolls to answer Kuper's questions"; (ii) "identifi[ng] defendant as her abuser"; (iii) stating "that her father had put his thing in her"; and (iii) explaining "where on her body she had been touched during the abuse."  61 F.3d at 1450-51.  The statements were made during a preexamination interview.  The "purpose of the [first] interview was 'to ascertain exactly what injuries had occurred.'"  61 F.3d at 1450.  The purpose of the second interview was rapport building, which

-19-

facilitated evaluation and diagnoses, because, the doctor explained: "the child needs to be comfortable with me before I examine her."  61 F.3d at 1450.  The Tenth Circuit held that, "[b]ecause the adequacy of [the doctor's] examination in part depended on the child's comfort with her, . . . A.T.'s statement was reasonably pertinent to [the doctor's] diagnosis or treatment," and "consequently was admissible under Rule 803(4)."  61 F.3d at 1450-51.  The Tenth Circuit also held admissible "testimony concern[ing] [the doctors'] findings and conclusions from the physical examination[s]."  61 F.3d at 1450.

Like the statements that Tenth Circuit held admissible under rule 803(4) in United States v. Tome, Doe's statements to Dr. Ornelas were made during the course of a sexual assault examination as part of an investigation into allegations of sexual abuse months after the abuse was alleged to have occurred.   Like the statements in United States v. Tome, Doe's statements during Dr. Ornelas's examination were reasonably pertinent to diagnosis or treatment, because Doe made the statements while Dr. Ornelas was assessing Doe's physical condition and well-being.  Doe stated to Dr. Ornelas that: (i) Chaco told Doe to lick his privates; (ii) Chaco told Doe to touch his privates with her hand; (iii) Chaco took off all Doe's clothing; (iv) Chaco touched Doe's chest, her "front," and her "butt" with his hands; (v) Chaco put his "thing" in Doe's  "front"; (vi) Chaco put his finger in her "front"; (vii) Doe observed "white stuff" come out of his "thing" and land on her body, which he then wiped off of her; (viii) the abuse occurred during occasions when the Chaco was drunk; (ix) Chaco told Doe that he was "never going to do it again"; (x) Chaco would attempt to sneak up on Doe when she was asleep; and (xi) the abuse occurred when she was ten or eleven years old.  The Court understands that the purpose of the sexual abuse examination was to assess both Doe's physical and psychological condition, and to determine whether Doe was in a safe environment or

-20-

remained at risk of further abuse.[2]  The Court, after carefully reviewing each of Doe's statements, believes that they are reasonably pertinent to diagnosis or treatment, and therefore admissible. Doe's statements about the details of the abuse were relevant to determining where signs of abuse may be found and deciding for where to test for sexually transmitted diseases.  See United States v. Tome, 61 F.3d at 1450-51 (admitting statements "about the sexual abuse, at times pointing to the appropriate areas of dolls to answer Kuper's questions," stating "that her father had put his thing in her," and explaining "where on her body she had been touched during the abuse").  Understanding the nature and scope of the abuse is also pertinent to deciding what treatment and counseling may be necessary.  See United States v. Tome, 61 F.3d at 1450-51 (admitting statements explaining "where on her body she had been touched during the abuse").  Doe's identification of Chaco as her abuser and her statement that he abused her when he was drunk was part of Dr. Ornelas' sexual assault evaluation, because determining the identity of the abuser is necessary to determine if an abuse victim is in a safe environment or in danger of being abused again.  See United States v. Tome, 61 F.3d at 1450-51 (admitting statements "identifi[ng] defendant as her abuser").  In sum, Doe's statements about who touched her, where he touched her, and when he touched her were reasonably pertinent to Dr. Ornelas' proper diagnosis and treatment of Doe, and are therefore admissible pursuant to rule 803(4).

II      **THE COURT'S ADMISSION OF DOE'S STATEMENTS DOES NOT VIOLATE CHACO'S CONFRONTATION-CLAUSE RIGHTS.**

The Court's decision comports with the Supreme Court's holding in Crawford v. Washington.  The Confrontation Clause in the Sixth Amendment to the United States Constitution

---

[2] If the Court misapprehends the nature of the evaluation, Chaco may approach the Court for reconsideration.

provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In <u>Crawford v. Washington</u>, the Supreme Court interpreted the Confrontation Clause to "forbid[] the admission of testimonial statements of a witness <u>who did not appear at trial</u> unless [the witness] was unavailable to testify, and the defendant had a prior opportunity for cross-examination."  541 U.S. at 53-54 (emphasis added).  The United States has committed that Doe will testify at Chaco's trial, removing Doe's testimony from <u>Crawford v. Washington's</u> domain.  The Supreme Court stated in <u>Crawford v. Washington</u>:

> [W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.  <u>See</u> <u>California v. Green</u>, 399 U.S. 149, 162 . . . (1970). . . .  The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

541 U.S. at 59 n.9.  The United States has represented to the Court that Doe, the declarant of the challenged out-of-court statements, will be present at trial to be cross-examined on her statements.  Because Doe will be present at trial, and because Chaco will have an opportunity to cross-examine her and demand that she defend or explain her out-of-court statements, the Confrontation Clause does not prohibit the United States from introducing that statements.[3]

---

[3] The Court does not decide whether Doe's statements are testimonial, because, on the record before it, the Court does not have sufficient information to make that determination.  Although <u>Crawford v. Washington</u> did not offer a precise definition of testimonial evidence, the Supreme Court offered various formulations of the core class of testimonial statements, noting that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or a former trial; and to police interrogations."  541 U.S. at 51-52.  <u>See</u> <u>Davis v. Washington</u>, 547 U.S. 813, 822 (2006)(refining <u>Crawford v. Washington's</u> analysis of when statements made during a police investigation are testimonial for purposes of the Sixth Amendment, stating: "Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.").  The Tenth Circuit has held that "a statement [wa]s testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime."  <u>United States v. Townley</u>, 472 F.3d at 1272 (quoting <u>United States v. Summers</u>, 414 F.3d at 1302).  <u>See</u> <u>United States v.</u>

Townley, 472 F.3d at 1272 (citing United States v. Hinton, 423 F.3d at 360; United States v. Cromer, 389 F.3d at 675; United States v. Saget, 377 F.3d at 229).  Because federal investigators arranged for Dr. Ornelas to examine Doe, under this definition, the statements at issue may be testimonial.  The Tenth Circuit in United States v. Smalls, however, called into question some aspects of the definition of testimonial that it set down in United States v. Summers.  Specifically, the Tenth Circuit stated that a testimonial statement must be made in a "formal" context, although it was not specific about what that might mean.  See United States v. Smalls, 605 F.3d at 777-78. Next, the Tenth Circuit specified that the United States v. Summers articulation ignored the statement's "primary purpose" and focused instead on the foreseeability to the declarant of the purposes to which the statement "might" be put.  United States v. Smalls, 605 F.3d at 777-78.  With those two clarifications, it declined to restate a precise definition of a testimonial statement, instead setting forth two proposed definitions, either one of which it might adopt if the issue were put directly before it.  See 605 F.3d at 778 (stating that it "need not now resolve the apparent tension between Davis and Summers").  The Court previously addressed whether an alleged sex abuse victims' statements to a physician's assistant during a forensic examination as part of the investigation into her allegations were testimonial.  See United States v. Wilson, No. CR 09-1465 JB, 2010 WL 3023035 (D.N.M. June 23, 2010)(Browning, J.).  The Court concluded it "would likely not find" that the statements were testimonial under either alternative the Tenth Circuit suggested in United States v. Smalls, because the child's principle purpose in making the statements was to further her treatment:

> Applying the alternative tests that the Tenth Circuit in United States v. Smalls proposed, the statements are not testimonial.  If a testimonial statement is "a formal declaration made by the declarant that, when objectively considered, indicates the primary purpose for which the declaration was made was that of establishing or proving some fact potentially relevant to a criminal prosecution," 605 F.3d at 778, the Court would likely not find that the statement is testimonial.  The Court founds credible Frank's testimony that her primary concern when taking Jane Doe to the authorities was to ensure that Jane Doe was healthy and not in serious immediate danger.  Jane Doe understood that she was speaking to a nurse because there was some concern that she "ha[d] something in [her]."  Tr. at 20:14-17 (Rozzoni, Jane Doe).  The Court finds that Jane Doe's primary purpose for her statements was to diagnose a potential medical problem, not to establish or prove some fact potentially relevant to a criminal prosecution.  While the Court is concerned about Frank's motives for taking Jane Doe to Barrett, the Court believes that the United States has shown, by a preponderance of the evidence, that her primary purpose was for diagnosis of her young daughter, and not for the criminal prosecution.  More importantly, the United States has established by a preponderance of the evidence that Jane Doe understood . . . the primary purpose for which she was talking to Barrett was medical -- to determine whether "something [was] in [her]."  Tr. at 20:14-17 (Rozzoni, Jane Doe).  Under the first alternative definition, Jane Doe's statement would not be testimonial.

_____

The statement is likewise non-testimonial if a testimonial statement is "[a] formal statement [which] a reasonable person in the position of the declarant would objectively foresee that the primary purpose of [which] statement [is] for use in the investigation or prosecution of a crime." United States v. Smalls, 605 F.3d at 778. Although this articulation is awkward -- it demands the Court to discern the declarant's understanding of the primary purpose for which the person to whom he or she made the statement will put the statement, and whether that understanding is objectively reasonable -- it counsels that Jane Doe's statement was non-testimonial. While Frank told Jane Doe that, "if [the situation] were to go to trial, that [the statements to Barrett] would be used for that," Tr. at 7:9-13 (Rozzoni, Frank), Frank first told her that the interview was "[t]o make sure [she was] okay," id. Moreover, Jane Doe knew that she was talking to a nurse and that the interview was happening because there was a concern that there was "something in [her]." Id. at 20:14-17 (Rozzoni, Jane Doe).   A ten-year-old girl speaking to a nurse under those circumstances would be unlikely to predict that the "primary purpose" for which the nurse was taking the statement was to "investigat[e] or prosecut[e] a crime." United States v. Smalls, 605 F.3d at 778.  It is also likely that her subjective understanding was objectively reasonable.

While the analysis in United States v. Summers points to the conclusion that Jane Doe's statements to Barrett are testimonial, the Tenth Circuit's recent opinion in United States v. Smalls suggests that her statements are not testimonial.  In any case, the Court concludes that it need not and should not resolve whether the statement is testimonial.  See United States v. Martinez, No. CR 09-2439 JB, 2010 WL 965521, at *26 n.19 (D.N.M. Feb. 25, 2010) (Browning, J.)("Federal courts are to avoid rendering decisions on constitutional questions unless reasonably necessary.")(citing Nw. Austin Mun. Util. No. One v. Holder, 129 S. Ct. 2504, 2508 (2009)(Roberts, C.J.)("Our usual practice is to avoid the unnecessary resolution of constitutional questions."); Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1267 n.7 (10th Cir. 2004)("Our usual practice is to avoid the unnecessary resolution of constitutional questions."); United States v. Hardman, 297 F.3d 1116, 1135-36 (10th Cir. 2002)(expressly reaching its conclusion on statutory grounds "to avoid constitutional issues.")).  The United States has represented that Jane Doe will testify at trial, and the Confrontation Clause will not bar admission of the statements, even if they are testimonial, so long as Wilson has an opportunity to cross-examine Jane Doe regarding them.  The Court has no reason to believe that the United States will not be true to that representation.  So long as the United States remains true to that representation and Jane Doe testifies, there is no constitutional reason to prohibit admission of the statements.

It may be that Doe's statements to Dr. Ornelas, which were part of a medical examination, were "made for purposes of diagnosis and treatment, rather than to inculpate" Chaco.  Moses v. Payne, 555 F.3d 742, 755 (9th Cir. 2009)(holding that the state court's conclusion  that "statements to Dr.

**III.   THE COURT WILL NOT ALLOW DR. ORNELAS TO OPINE WHETHER DOE WAS SEXUALLY ABUSED, BUT IT WILL ALLOW DR. ORNELAS TO TESTIFY THAT SHE FOUND NO PHYSICAL EVIDENCE OF SEXUAL ABUSE AND THAT AN ABSENCE OF EVIDENCE OF SEXUAL ASSAULT IS CONSISTENT WITH SEXUAL ASSAULT.**

In United States v. Velarde, the Tenth Circuit in dicta stated that "Dr. Ornelas's statement that she would base her diagnosis of child sexual abuse on the child's statements about what had happened to them, appears to be impermissible vouching." 214 F.3d at 1211 n.6. Chaco argues that, because there was no physical evidence of abuse, Dr. Ornelas' opinion whether Doe was abused would be similarly based only on Doe' statements to Dr. Ornelas. Chaco argues therefore that the Court should not allow Dr. Ornelas to opine whether Doe was sexually abused, because her testimony would be impermissible vouching. "The government agrees and will not ask any question regarding Dr. Ornelas's opinion as to whether the victim had been sexually abused or seek to introduce any other diagnosis that would require Dr. Ornelas to rely on the victim's statement about what had happened to her." Impeachment MIL at 3-4. The Court therefore orders that Dr. Ornelas may not testify whether she believes Doe was sexually assaulted.

Dr. Ornelas asserts that between 92 percent and 98 percent of all physical exams of sexually

---

Appleton were non-testimonial because they were made for purposes of diagnosis and treatment, rather than to inculpate" was "not an unreasonable application of the legal principle established by Crawford"). On the record before it, however, the Court is not prepared to decide whether the statements were testimonial. The United States represented at the hearing that Doe will testify, and that she will testify before Dr. Ornelas. If Doe testifies, it makes it unnecessary for the Court to determine whether her statements to Dr. Ornelas are testimonial. If, however, Doe does not take the stand, or freezes up and is unable to testify, the Court may need to decide whether the her statements to Dr. Ornelas are testimonial. Should that occur, the Court will make additional findings to determine whether her statement were permissible under United States v. Summers' alternative standards.

assaulted prepubescent girls result in normal findings.  Chaco did not object to Dr. Ornelas testifying

that between 92 percent and 98 percent of all physical exams of sexually assaulted prepubescent

girls result in normal findings, and the Court will also allow that testimony.  Chaco also stated at the

hearing that he does not object to Dr. Ornelas testifying that her examination of Doe revealed no

evidence of sexual abuse and that this finding is not inconsistent with sexual abuse.  The Court will

therefore also allow this testimony.

**IT IS ORDERED** that: (i) the United States' Motion in Limine to Permit Testimony for

Medical Provider Regarding Victim's Statement Pursuant to Fed. R. Evid. 803(4), filed July 18,

2011 (Doc. 28), is granted; (ii) the United States' Motion *in Limine* to Narrow Scope of

Impeachment of Dr. Renee Ornelas, filed July 25, 2011 (Doc. 37), is granted; (iii) Renee Ornelas,

M.D., may testify about Jane Doe's statements to Dr. Ornelas during the course of a sexual assault

examination; (iv) Dr. Ornelas' may testify that she found no evidence of sexual abuse during her

examination; (v) Dr. Ornelas may testify that finding no physical symptoms of sexual abuse is not

inconsistent with sexual abuse; (vi) Dr. Ornelas may testify that between 92 percent and 98 percent

of all physical exams of sexually assaulted prepubescent girls result in normal findings; and (vii)

Defendant Eddie Chaco, Jr. may not cross-examine Dr. Ornelas about United States v. Velarde, 214

F.3d 1204 (10th Cir. 2000), or otherwise mention or use United States v. Velarde.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
   United States Attorney
Jack Burkhead
Niki Tapia-Brito
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Samuel L. Winder
Law Office of Samuel L. Winder, LLC
Albuquerque, New Mexico

   *Attorney for the Defendant*